IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEAN STACY, NORMA STACY, DONALD STACY, STEVE CARVEY, and ANTHONY STACY,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>Defendant. | CV 13–87–M–DWM–JCL<br><br>FINDINGS & RECOMMENDATION |

This negligence action comes before the Court on Defendant Burlington Northern Santa Fe Railway Company's ("BNSF") motions for summary judgment. For the reasons set forth below, BNSF's motions should be granted and this case should be dismissed.

I. **Background**

Pro se plaintiffs Dean Stacy, Norma Stacy, Donald Stacy, Steve Carvey, and Anthony Stacy (collectively "Plaintiffs") commenced this action against BNSF in

-1-

April 2013. Plaintiffs have either lived near railroad tracks used by BNSF or been employed by BNSF in the past.[1] (Doc 20). Plaintiffs allege that BNSF negligently transported asbestos in uncovered railroad cars from the infamous W.R. Grace asbestos mining operation in Lincoln County, Montana, thereby exposing them to asbestos dust and causing them to develop asbestos-related disease. Plaintiffs advance claims of negligence against BNSF and seek compensatory damages in the amount of 1.5 million dollars.

Plaintiffs filed their complaint in state court, and BNSF later removed the case to this Court based on diversity jurisdiction. BNSF moves for summary judgment on the following grounds: (1) the negligence claims advanced by four of the five Plaintiffs are barred by the statute of limitations; (2) the fifth Plaintiff has not presented any evidence to establish an essential element of his negligence claim and; (3) Plaintiffs have failed to designate any expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2).

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary

---

[1] In light of Plaintiffs' pro se status, the Court will liberally construe the factual allegations of the Complaint in Plaintiffs' favor and assume for present purposes that this factual statement is true.

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must

view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

Plaintiffs have filed a two-page brief in response to BNSF's summary judgment motions (Doc. 83), but they have not submitted a statement of genuine issues as required by Local Rule 56.1(b). Nor have they filed any exhibits, affidavits, or other evidentiary materials in opposition to BNSF's motions. Notwithstanding these deficiencies, the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition or violates a local rule" and must "analyze the record to determine whether any disputed material fact [is] present." *Ahanchian v. Xenon Pictures,*

Inc., 624 F.3d 1253, 1258 (9th Cir. 2010). *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) ("a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitled to judgment as a matter of law.")

Bearing these principles in mind, the Court turns now to the question of whether BNSF has met its summary judgment burden of showing that there are no material issues of fact and that it is entitled to judgment as a matter of law.

## III. Discussion

### A. Statute of Limitations

BNSF argues that the negligence claims advanced by Plaintiffs Dean Stacy, Norma Stacy, Donald Stacy, and Steve Carvey are barred by the statute of limitations.

Under Montana law,[2] the statute of limitations in an action for negligence is three years. Mont. Code Ann. § 27-2-204(1). This means that a negligence action must be commenced within three years from the time the claim or cause of action accrues. *Kaeding v. W.R. Grace & Co.*, 961 P.2d 1256, 1259 (Mont. 1998). "A

---

[2] Sitting in diversity jurisdiction, this Court applies the substantive law of Montana as the forum state. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

claim or cause of action accrues 'when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.'" *Kaeding*, 961 P.2d at 1259 (*quoting* Mont. Code Ann. § 27-2-102(1)(a)).

As a general rule, lack of knowledge by the plaintiff "of the claim or cause of action, or its accrual, does not postpone the beginning of the period of limitations." *Kaeding*, 961 P.2d at 1259 (*citing* Mont. Code Ann. § 27-2-102(2)). When the facts constituting the claim are by their nature concealed or self-concealing, however, "the period of limitations does not commence 'until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party....'" *Kaeding*, 961 P.2d a 1259-60 (*quoting* Mont. Code Ann. § 27-2-102(3)).

Plaintiffs allege injury in the form of asbestos-related disease, which is by its nature self-concealing. *See Kaeding*, 961 P.2d at 1260 (characterizing asbestosis as a latent disease that is, by its nature, self-concealing). Whether Plaintiffs' claims are barred by the three year limitations period thus depends on when Plaintiffs discovered, or in the exercise of due diligence should have discovered, the facts constituting their negligence claims. *Kaeding*, 961 P.2d at 1260).

Under this standard, the statute of limitations may begin to run even before a medical diagnosis is made. *See Chriske v. State ex rel. Dept. of Corrections and Institutions*, 235 P.3d 588, 590-91 (Mont. 2010); *Kaeding*, 961 P.2d 1256, 1260-61. The question of when the limitations period began to run depends on when Plaintiffs discovered or should have discovered they were suffering from asbestos-related disease or lung problems that might have been caused by exposure to asbestos or vermiculite transported by BNSF.

BNSF maintains it is clear based on the medical records and deposition testimony that Plaintiffs were aware of the facts constituting the basis of their negligence claims as many as twelve years before they filed this lawsuit, which means that the three-year statute of limitations has long since expired and their claims are time-barred.

      1.    <u>Dean Stacy</u>

Addressing each Plaintiff separately, BNSF argues that Dean Stacy's ("Dean") medical records and deposition testimony establish that he knew of his injury and the alleged cause as early as December 2001.

BNSF has submitted evidence showing that Dean was examined at the Center for Asbestos Related Disease ("CARD Clinic") on December 19, 2001, at which time the physician who examined him concluded that "most likely has

asbestos related disease with a significant interstitial component..." (Doc. 70-2). Dean confirmed at his deposition that was diagnosed with an asbestos related disease in 2001. (Doc. 70-3). Dean also made clear that he was aware in 2001 that he had been exposed to asbestos or vermiculite from BNSF. (Doc. 70-3, 70-4, 70-6). The undisputed evidence thus establishes that Dean was aware of the facts constituting his negligence claim, including his injury and the alleged cause, as early as December 2001. Dean did not file his complaint against BNSF until April 2013 – more than twelve years later.

Even if there was some question as to whether Dean was aware of the facts constituting his negligence claim as early as 2001, BNSF has provided additional medical records establishing that Dean was examined at the CARD Clinic six more times between October 2004 and December 2009. (Doc. 7-5). In October 2004, doctors at the clinic were concerned that Dean's asbestosis was progressing (Doc. 70-5, at 1). By November 2005, the physician who examined Dean reported that his asbestosis was "progressing more significantly." (Doc.70-5, at 2). Dean's deposition testimony reflects that when he was examined at the CARD Clinic in November 2005 and followed up again in December 2009, he was aware that his asbestosis could be related to his "alleged exposure from the railroad." (Doc. 70-7). Moreover, Dean has acknowledged bringing similar claims for his asbestos-

related injuries against WR Grace in 2000 or 2001, and against the State of Montana in 2006 or 2007. (Doc. 70-9, 70-10). The undisputed evidence thus establishes that Dean was aware of the facts constituting his negligence claim no later than December 2009, but waited another four years before filing suit against BNSF in April 2013.

The extent of Dean's argument in opposition to BNSF's motion for summary judgment on statute of limitations grounds is set forth in one sentence in the Plaintiffs' joint response brief: "The plaintiffs were bar[r]ed from [instituting suit] under bankruptcy protection." (Doc. 83, at 1). But Dean does not explain what bankruptcy he is referring to, or offer any additional details. Nor has he submitted any evidence that BNSF ever declared bankruptcy or was ever subject to a bankruptcy stay. Dean has not come forward with any evidence to counter that presented by BNSF, which demonstrates that Dean was aware of the facts constituting his negligence claim as many as twelve, and no fewer than four, years before he filed his complaint in this case. The three year statute of limitations applicable to Dean's negligence claim has thus expired, and BNSF is entitled to summary judgment.

  2. <u>Norma Stacy</u>

BNSF maintains that Norma Stacy's ("Norma") medical records and her

husband Dean's deposition testimony establish that she too knew, or should have known, of her injury and the alleged cause more than three years before she filed suit.

BNSF has submitted medical records showing that Norma was examined at the CARD Clinic on December 19, 2001, by which time she had already been diagnosed with asbestos related disease. (Doc. 73-2). Norma returned to the CARD Clinic for follow up visits for her asbestos related disease in July 2006, September 2008, and December 2009. (Doc. 70-4, 70-5, 70-6). Dean testified at his deposition that Norma joined him in filing similar claims for her asbestos-related injuries against WR Grace in 2000 or 2001, and against the State of Montana in 2006 or 2007. (Doc. 73-7, at 1-3). Dean explained that by December 2009, he and Norma thought they had also filed suit against BNSF to recover for their asbestos-related injuries, which shows Norma was aware that her asbestos related disease could have been due to exposure from BNSF. (Doc. 70-8).

Considered together, Dean's testimony and Norma's medical records are thus sufficient to establish that Norma was aware, or should have been aware, as early as December 2001 and no later than December 2009 that her asbestos related disease could have been related to exposure from BNSF. Norma does not argue otherwise or offer any evidence to the contrary in response to BNSF's motion.

The only argument Norma and her fellow Plaintiffs make in their joint brief in opposition to BNSF's motion is that they were somehow barred from filing suit because of an unspecified, undocumented bankruptcy stay. That argument fails for the reasons set forth above.

Norma has not come forward with any evidence to counter that presented by BNSF, which demonstrates that she was aware of the facts constituting her negligence claim as many as twelve, and no fewer than four, years before she filed her complaint in this case. The three year statute of limitations applicable to Norma's negligence claim has thus expired, and BNSF is entitled to summary judgment.

### 3. Donald Stacy

BNSF argues that Donald Stacy's ("Donald") medical records and deposition testimony similarly establish that he knew, or should have known, of his injury and the alleged cause more than three years before he filed suit.

BNSF has submitted evidence showing that Donald was first examined at the CARD Clinic on February 21, 2001, at which time doctors found he had interstitial disease consistent with asbestosis. (Doc. 76-2, at 1). When Donald returned to the CARD Clinic approximately six months later, the examining physician noted that his chest x-rays showed "[p]leural changes bilaterally of

extensive pleural related asbestos change." (Doc. 76-3, at 1). At his deposition, Donald confirmed that he was diagnosed with an asbestos related disease in 2001. (Doc. 76-4, at 2-3). Donald testified he was aware in 2001 that he could have been exposed to asbestos from BNSF, and said he knew as early as 2000 that people were suing the railroad for alleged asbestos related disease. (Doc. 76-8, at 2-3). Donald filed suit against WR Grace in 2001, seeking to recover for the same asbestos-related injuries he alleges here. (Doc. 76-10, at 3).

Donald's medical records and deposition testimony are thus sufficient to establish that he was aware of the facts constituting his negligence claim, including his injury and the alleged cause, as early as 2001. Donald does not argue otherwise or offer any evidence to the contrary in response to BNSF's motion. To the extent Donald argues he was somehow precluded from filing suit before April 2013 because of an undocumented bankruptcy stay against an unspecified entity, his argument fails for the reasons set forth above.

The undisputed evidence thus establishes that Donald was aware, or should have been aware, of the facts constituting his negligence claim, including his injury and the alleged cause, as early as 2001. Because he did not file his complaint against BNSF until April 2013 – more than twelve years later – his claims are barred by the statute of limitations.

4.   Steve Carvey

BNSF argues that Steve Carvey's ("Carvey") medical records and deposition testimony establish that he too was aware, or should have been aware, of his injury and the alleged cause several years before filing suit.

The medical records BNSF has provided show that Carvey was examined at the CARD Clinic on November 9, 2000. (Doc. 79-2). The examining physician found "evidence of asbestos related disease with focal bilateral pleural thickening." (Doc. 79-2). A CT-Scan taken that day revealed asbestos related disease with bilateral pleural thickening. (Doc. 79-3). At his deposition, Carvey confirmed that he had been diagnosed with asbestos related disease in 2000. (Doc. 79-4). Carvey testified that he knew when he was diagnosed in 2000 that he could have been exposed to asbestos or vermiculite from BNSF. (Doc. 79-6, at 2). The record also reflects that Carvey filed suit against WR Grace and the State of Montana in 2000, seeking to recover for the same asbestos-related injuries he alleges here. (Doc. 79-7).

Carvey's medical records and deposition testimony are thus sufficient to establish that he was aware of the facts constituting his negligence claim, including his injury and the alleged cause, by November 2000. Carvey does not argue otherwise or offer any evidence to the contrary, and his argument that he

was somehow precluded from filing suit before April 2013 because of an undocumented bankruptcy stay against an unspecified entity fails for the reasons set forth above. Because Carvey was aware of the facts constituting his negligence claim by November 2000 but did not file suit until April 2013, his negligence claims against BNSF are barred by three year statute of limitations.

In sum, the undisputed evidence that establishes that Dean, Norma, Donald, and Carvey were all aware of the facts constituting their negligence claims more than three years before they filed suit against BNSF, which means the three year statute of limitations has expired and BNSF is entitled to summary judgment. Even if the limitations period had not run, BNSF would be entitled to summary judgment on the alternative ground that Plaintiffs have not designated any expert witnesses.

### B.     Failure to Designate Expert Witnesses

BNSF moves for summary judgment on the claims advanced by all five Plaintiffs, including Anthony Stacy ("Anthony"), on the ground that they have failed to designate any expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2).

To establish negligence under Montana law, a "plaintiff must prove four essential elements: duty, breach, causation, and damages." *Fisher v. Swift Transp.*

*Co.*, 181 P.3d 601, 606 (Mont. 2008). Expert witness testimony is required to establish duty, breach, and causation in a negligence case when those issues are "sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Dubiel v. Montana Department of Transportation,* 272 P.3d 66, 70 (Mont. 2012). *Tin Cup County Water and/or Sewer District*, 200 P.3d 60, 69 (Mont. 2008) (concluding expert opinion testimony was required where the issues of causation were "beyond the common experience and understanding" of lay jurors). Where a plaintiff fails to present the expert testimony necessary to prove the elements of a negligence claim, summary judgment dismissing the claim is warranted. *Dubiel*, 272 P.3d at 70.

Plaintiffs allege they developed asbestos related disease as a result of having been exposed to asbestos transported by BNSF in uncovered railroad cars. Plaintiffs' negligence claims raise several issues that are beyond the common experience and understanding of lay jurors, including the standard of care applicable to a railroad transporting asbestos and whether BNSF's conduct deviated from that standard of care. In addition, the question of whether Plaintiffs have developed asbestosis or asbestos related disease as a result of having been exposed to asbestos from BNSF involves complex issues of medical causation.

Plaintiffs would have to present expert testimony to establish each of these necessary elements of their negligence claims.

As BNSF correctly points out, however, Plaintiffs have not designated any experts to testify on these matters and deadline for doing so has passed. In May 2014, the Court entered a modified scheduling order extending the expert disclosure deadlines. (Doc. 41). The modified scheduling order required that Plaintiffs disclose all damages and liability experts on or before December 30, 2014. (Doc. 43). As of the date of these Findings & Recommendation, Plaintiffs have not designated any expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(A). Nor have they produced any Fed. R. Civ. P. 26(a)(2)(B) expert reports.

Where, as here, a party fails to provide information or identify a witness as required by Fed. R. Civ. P. 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless." Fed. R. Civ. P. 37(c)(1). Plaintiffs simply state in opposition to BNSF's summary judgment motion that they "had a expert witness but could not afford him." (Doc. 83, at 1). This single statement is not enough to establish that Plaintiffs' failure to identify any expert witnesses was substantially justified or harmless. Nor is it enough to establish good cause for failing to comply with the December 30, 2014, expert witness

disclosure deadline set forth in the modified scheduling order.  *See* Fed. R. Civ. P. 16(b)(4) (requiring good cause to modify a scheduling order).  Without expert testimony, Plaintiffs cannot establish the essential elements of their negligence claims and BNSF is entitled to summary judgment.[3]

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that BNSF's Motions for Summary Judgment (Docs. 68, 71, 74, 77, 80) be GRANTED.

DATED this 23rd day of February, 2015.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge

---

[3] Having so concluded, the Court need not consider BNSF's alternative argument that it is entitled to summary judgment on Anthony's claims because he has not come forward with any evidence to establish the essential elements of negligence.